### BLACKWATER VALLEY STATE BANK v. EDWARDS. (No. 3329.)

Court of Civil Appeals of Texas. Amarillo. Dec. 4, 1929.

Rehearing Denied Jan. 8, 1930.

Robt. A. Sowder, of Lubbock, for appellant. J. D. Thomas, of Farwell, and Jas. A. Gowdy, of Olton, for appellee.

RANDOLPH, J. This suit was filed by appellee, Edwards, against appellant to recover judgment for money collected on certain notes and for the conversion of other notes. The appellant filed its answer and also its cross-action making one D. V. Osborn a party defendant. On trial before the court without the intervention of a jury, the defendant, appellant, having dismissed its cross-action against Osborn, the trial court rendered judgment in favor of the plaintiff and against the defendant bank. From such judgment this appeal was taken.

The plaintiff's petition alleges that Osborn had conducted a farm sale on his farm and sold certain personal property and took from the purchasers at said sale 18 promissory notes, the payment of which was secured by mortgages on the chattels sold there; the petition fully described each of said notes and the property upon which the mortgages were given to secure same. Further it is alleged that said notes were for a valuable consideration transferred and delivered to the plaintiff without recourse by the said Osborn; that before the maturity of said notes, plaintiff placed or caused to be placed the said notes with the defendant bank for collection; that it was distinctly understood by and between the plaintiff and defendant that said notes were held by the defendant for collection, and that when any of said notes were collected, the proceeds from same were to be deposited to the credit of the plaintiff; that the defendant in acting in pursuance of said agreement and understanding, as alleged, collected some of said notes and deposited the proceeds to the credit of the plaintiff, for which plaintiff received deposit slips. It is further alleged that the defendant has collected a number of said notes, the amount of which is not known to the plaintiff; that the plaintiff has from time to time demanded an accounting from the defendant and has repeatedly requested the defendant to pay over to him the amounts collected on said notes, and has demanded the possession of said notes which are uncollected; and that the defendant has refused to pay said money or to return said notes, but has appropriated the same to its own use and benefit. Other allegations are contained in the petition which are immaterial to the questions we shall discuss as being conclusive of this case on appeal.

The defendant filed its answer, consisting of a general demurrer and also quite a number of special demurrers, also a special plea that the transfer, if any, made by Osborn to the plaintiff was colorable and made for the purpose of placing the same beyond the reach of Osborn's creditors, he being deeply involved on judgments and past-due indebtedness, and that had it reached the knowledge of his creditors, they would have impounded said notes by process of law and subjected

1106

them to the payment of said Osborn's debts, but that the plaintiff and Osborn entered into a conspiracy whereby the notes would be transferred on their face to the plaintiff herein, thereby to evade application of same to Osborn's debts, and that said conspiracy was formed very shortly after the execution of said notes and before they were placed with the defendant. Further defendant bank sets out in detail that a judgment had been recovered by one Martin against Osborn, and that a writ of garnishment had been issued under said judgment and served upon it. However; the attorney for the defendant admits in his oral argument that said garnishment is void and that he does not rely on it as a defense.

The evidence shows substantially as the facts of the transaction between Osborn and plaintiff Edwards: That Osborn had a sale of his farm implements and other personal property, in which sale the notes in controversy were obtained from the various purchasers thereof. That Osborn was indebted in the sum of several hundred dollars to the plaintiff Edwards, and that Osborn approached the plaintiff and said he had some notes he wanted to dispose of, and that his bank had asked him the question if he had a friend he could transfer these notes to who would take them out of his name. It does not appear from the testimony of Edwards why the bank thought the notes were unsafe in Osborn's hands, but does show that he was afraid that somebody might attach or garnishee them. Edwards declined at that time to become interested in the matter, but did agree that he would investigate the notes and see if he was safe in handling them. As stated, Osborn was indebted by note to Edwards in a sum between $400 or $500, which was secured by chattel mortgage. Edwards had some conversation with Osborn relative to buying the notes and the cancellation of the indebtedness of Osborn to him (Edwards). Edwards and Osborn then went to Plainview and consulted an attorney, who told Edwards that he would be safe in buying the notes if they were all right, if the notes were well secured, and told him also that the notes were not subject to garnishment. On their return home, Osborn and the plaintiff Edwards concluded a trade for the notes, and Osborn transferred them to him by the following indorsement thereon: "Pay to the order of J. Arthur Edwards without recourse on me. March 1, 1927. D. V. Osborn." Osborn then delivered the notes into the possession of Edwards.

In explanation of the consideration for the transfer of the notes to him by Osborn, the plaintiff testified: "As to what else was said about the consideration other than the cancellation of the note that Mr. Osborn owed me, as I told you awhile ago, he wanted to come on one of my places and I had a hundred acres of land that I was working and planned to put in wheat and we had an agree-

ment how this land was to be worked, how many times, and to be planted in wheat the last week in August. That was on my land, —I owned the land. This was the No. 100 acres of the W. ½ of Sec. No. 63, Block 1, Halsell Sub-division. I contemplated planting the 100 acres in wheat. I was to give him a half interest in the crop after I had done all the work of sowing and also cancellation of this note that Mr. Osborn owed me, for the note."

After the trade was consummated, Edwards told Osborn to stay all night with him and he would send the notes back to the bank, as that was the best place for them; that he did not know the people who made the notes and that he thought a banker was about as good a way of collecting notes as anybody; that he is sure he sent them back to the bank by Osborn. He wrote a letter to Mr. Aldridge, the banker, does not have a copy of the letter, but in the letter plaintiff told Aldridge to collect the money and put the money to his credit in his bank. Plaintiff does not remember that Aldridge ever wrote him until he wrote sending the deposit slips some time later. The two deposit slips were introduced in evidence.

There is no question of innocent purchaser presented by the defendant's pleadings or in the evidence. The defendant relies wholly upon its charge that the notes were the property of Osborn; that the sale was a simulated one and born of a conspiracy between Osborn and the plaintiff to defeat Osborn's creditors.

The notes in controversy were in the defendant bank for collection. The bank collected some of the notes and made a deposit of the proceeds of such collection to the credit of the plaintiff. Later, for some reason not disclosed by the record, a change was made in the amount of such deposit, and it was transferred to Mrs. Osborn's account, thus giving her the credit, and this amount was then checked out by her or Osborn. Other collections of some of the notes were made, and such amounts were appropriated by the defendant bank in payment of an account owing to it by Osborn. The uncollected notes are held by the bank awaiting the order of the court designating the party to whom they should be delivered.

The trial court rendered a general judgment in favor of the plaintiff as prayed for. At the request of the defendant bank, the court filed his findings of fact and conclusions of law. Among other findings of fact, the trial court found the sale of notes by Osborn was made for a valuable consideration to the plaintiff and that it was a bona fide sale and transfer of said notes to the plaintiff without any intent to defraud the creditors of Osborn and was made in due course of trade; that the plaintiff is the legal owner of said notes which have not been collected and of the proceeds of such notes as have been collected by the bank.

The evidence furnishes a sufficient basis for the findings of the court upon such issues. It is true that facts and circumstances in evidence and known to the bank raise the issue of want of good faith and of the ownership of the notes by Osborn, but they were controverted issues, and the trial court having decided these issues upon conflicting evidence, we are not authorized to disturb his findings.

The findings of fact by the trial judge are as conclusive on us as though there had been a jury verdict in answer to issues submitted and, being supported by the evidence, must stand. Ramirez v. Smith (Tex. Civ. App.) 56 S. W. 254, 260; Sanborn v. Gunter, 84 Tex. 273, 17 S. W. 117, 20 S. W. 72; Obenchain v. Nordyke Marmon Co. (Tex. Civ. App.) 35 S. W. 746.

We do not deem it necessary, in view of our holding above, to discuss other propositions submitted to us, but for the reasons stated above, we affirm the judgment of the trial court.